UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANICE ELIZABETH DOMM,

                Plaintiff,

vs.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,


                Defendant.

_____

DECISION
and ORDER

12-CV-6640T

## INTRODUCTION

Plaintiff, Janice Elizabeth Domm ("Domm" or "Plaintiff"), brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is contrary to applicable legal standards.

On June 6, 2013, the Commissioner moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence. On June 7, 2013, Plaintiff cross-moved for summary judgment. For the reasons set forth below, this Court finds that there is substantial evidence to support the Commissioner's decision. Therefore, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

**PROCEDURAL HISTORY**

On February 5, 2010, Plaintiff filed an application for DIB under Title II, § 216(I) and § 223 of the Social Security Act, alleging a disability since January 4, 2009 arising from arthritis in the knees, lower back pain, bursitis, breathing problems, diabetes, carpel tunnel in the right hand, coronary artery disease, circulation problems, tiredness and chronic pain. T. 161. Plaintiff's claim was denied on April 30, 2010. T. 52-56. At Plaintiff's request, an administrative hearing was conducted on August 19, 2011 before an Administrative Law Judge ("ALJ"). T. 25-49. Domm testified at the hearing and was represented by counsel. In addition, a vocational expert testified.

On September 15, 2011, the ALJ issued a Decision finding that Domm was not disabled at any time from the alleged onset date through the date last insured. (Tr. 12-21) On September 27, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. (Tr. 1-4) Plaintiff filed this action on November 26, 2012.

**BACKGROUND**

Plaintiff is a 58 year old high school graduate with two years of college education. (Tr. 162) She worked as a front office supervisor and secretary in a nursing home from June, 1981 until January 4, 2009 when she was laid off. T. 162-3, 182, 285. Domm's work at the nursing home including typing, billing, answering phones and general office work. T. 163. She indicated that she needed technical knowledge working a copier, printer, postage machine, fax machine, and computer. T. 183. The position also required writing skills to write letters, process billing, create office procedures and filing insurance forms. T. 163, 189. This position did not require lifting and Domm stated that the most she would have to lift in the position is less than 10 pounds. T. 164. Domm supervised four other employees spending almost half her time in a supervisory role. T. 164, 183.

Plaintiff's daily routine includes getting herself dressed, eating breakfast, going out for a walk, cleaning the kitchen, vacuuming, dusting, emptying dishwasher, doing laundry and some computer work to pay bills, "surf the internet" and play games. T. 174. Domm also gardens and paints. T. 176. She is able to feed and take care of her dog, walking her twice a day. T. 174. Donm points out that she can no longer walk for more than 10 minutes without resting and that she must split up her chores to avoid pain in her knees, back and hips and she

gets short of breath.  T. 178.  She also indicated that she can no longer lift items as heavy as 25 pounds. T. 174.  Domm drives a car and goes to the mall on a daily basis for walks. She meets friends for lunch or dinner. T. 178.  Plaintiff wears knee braces when she stands for long periods of time to prevent swelling and wears a hand splint at night. T. 179.

A. Medical History

   Plaintiff has a history of hypertension, hyperlipidemia, and coronary artery disease. T. 216. Domm was treated at Unity Cardiology Group for right coronary artery stenosis with the placement of stents in February, 2008. T.204-207. Plaintiff continued to experience shortness of breath in September, 2008 and was given a repeat cardiac catheterization. T. 204. Plaintiff was prescribed Plavix and Zocor.  T. 259-260. By December, 2008, Dr. Gerald Ryan, Plaintiff's cardiologist, indicated that now that the right side has been corrected, it was time to address the left side of her heart. T.262.

   Plaintiff was treated in January, 2009 with left heart catheterization, coronary angiography and primary stenting of the mid-left circumflex. T. 216-217.  The medical records indicate the procedures had no complications and were successful. T. 216.  Dr. Ryan commented in July, 2009, that a review of plaintiff's x-rays showed some scarring and decreased

pulmonary function in her lungs. However, the lungs were clear
and she has coarse breath sounds. T. 264. He advised Plaintiff
be cautious with dust and exposure to allergens. T. 264. By
February, 2010, Dr. Ryan observed that Plaintiff's treadmill
exercise test in the office was normal although she did have
some shortness of breath. T. 270. Plaintiff asked Dr. Ryan
about permanent disability who advised her to "see what
Dr. Lewish says about her knees." T. 270. Dr. Ryan again
examined plaintiff on February 8, 2011 with a follow up
treadmill test. He noted that plaintiff's heart rhythm was
regular and her respiratory effort was normal. T. 271.
Plaintiff was taking Nadolol for treatment of high blood
pressure, Spironolactone and Furosemide for fluid retention,
Lantus for control of diabetes, aspirin and vitamins. T. 271.
Dr. Ryan advised Plaintiff to continue with the same
medications and he would see her in one year. T. 271.

Plaintiff was initially diagnosed with osteoarthritis of
her left knee by Dr. Gregory Lewish of Westside Orthopaedic
Group in 2000. T. 226-27. He found no surgical intervention
was warranted but he recommended physical therapy and to take
Advil for pain. Dr. Lewish examined Domm for left knee pain in
2003 and again in 2005. T. 223-227. His recommendations
remained the same as in 2000: strengthening exercises and over
the counter pain medication. On March 18, 2010, Plaintiff was

examined by Dr. Lewish for evaluation of ongoing left knee pain. Dr. Lewish noted that Plaintiff had a history of an open left patellar realignment procedure in 1980 and had been experiencing pain in the knee since 1998. T. 219. Dr. Lewish observed that plaintiff walked with a satisfactory gait and stood with good posture. There was no edema, deformity or evidence of trauma. T. 219. The left knee was tender along the medial joint line region and the range of motion included five degrees to 126 degrees of flexion. T. 219. X-rays were taken of the knee and Dr. Lewish concluded that Plaintiff had "moderately severe left knee osteoarthritis primarily involving the medial and patellofemoral compartments." T. 220. He considered it a "fairly common problem" and explained to Plaintiff how the symptoms could be well controlled with conservative medical management with strengthening exercises and wearing a knee sleeve. T. 220. He noted that the knee arthritis was "not severe enough to warrant consideration of knee replacement surgery" and he specifically did not impose any restrictions or limitations. T. 220.

On March 31, 2010, Plaintiff was examined by Dr. Sandra Boehlert as an independent medical examination. T. 232-236. Dr. Boehlert noted that Plaintiff had a history of coronary artery disease that was first diagnosed in 2008. She had stents placed and catherizations. Although Domm had

nitroglycerin available to her, she reported that she has not needed to use it. She took Plavix and Bayer every day as well as hypertension pills, an ACE inhibitor and a water pill. Plaintiff also has had arthritis in her knees for which she does leg strengthening exercises. Plaintiff reported to Dr. Boehlert that she had to rest every 20 minutes when walking long distances and cannot stand more than 20 minutes before needing to rest. Plaintiff developed low back pain and hip pain in the past year but was not taking any pain medications. T. 232. Although Plaintiff had carpal tunnel syndrome in her right hand, she reported that she wears a brace at night and has no daytime limitations. T. 232. Plaintiff also reported that she took Lasix for fluid build-up in her legs and that she had fatigue. Plaintiff had diabetes since 2007 for which she was taking oral medications. Dr. Boehlert diagnosed Plaintiff with a history of osteoarthritis, lower back pain, a history of hip bursitis, coronary artery disease, carpal tunnel and dependent edema and found her prognosis to be "fair". T. 235. She specifically found that plaintiff had "no limitations noted on today's exam." T. 235.

A lumbrosacral spine x-ray taken of plaintiff on April 5, 2010 showed degenerative spondylosis at L1-L2 through L3-L4 but no compression fracture. T. 237.

On May 17, 2011, Plaintiff had an abdominal ultrasound performed to evaluate cirrhosis. T. 312. The images found that Plaintiff had no hepatomegaly but mildly increased diffuse echotexture of the liver which may be due to fatty infiltration. There was no intrahepatic biliary ductal dilation noted. T. 312.

Plaintiff was treated by Dr. Robert Blackburn of Hilton Health Care as her primary care provider since January 1981. He manages her diabetes medications as well as day to day medical concerns. On January 10, 2010, Dr. Blackburn noted that Plaintiff's A1C level was up even though there was an increase in Glyburide. He noted that Plaintiff was not looking for a new job and he suggested other medical secretarial work that he thought she could manage. T. 297. He increased Glyburide amount and discussed possibility to taking Lantus instead for her diabetes.

In February, Plaintiff complained of pain in her buttocks and hips while walking. T. 298. Dr. Blackburn noted that the left knee lacked a few degrees of extension and the right knee was almost intact for extension. T. 298. She was tender over the greater trochanters and non-tender in the gluteal areas. He diagnosed bursitis with continued osteoarthritis of the knees and diabetes. T. 298.

In April, 2010, with her diabetes running too high, Dr. Blackburn prescribed Lantus. In addition, he prescribed Advair to help with wheezing. T. 300. By May, 2010, Dr. Blackburn increased Lantus as it was effective in controlling plaintiff's blood sugar levels and stopped Glyburide. T. 301.

In June, 2010, Plaintiff presented disability forms and physical capacity forms to Dr. Blackburn to complete. During this examination, Plaintiff complained that she is sleeping too much, sleeping 8 hours at night and another four hours during the day. T. 304. She reported that she falls asleep at the computer with her hand on the mouse and wakes up an hour later with her hand still on the mouse. She avoids driving when she feels sleepy. Dr. Blackburn observed that plaintiff's lungs were clear, her heart sounds regular and there was no peripheral edema. T. 304. She no longer was taking Plavix but takes aspirin. Plaintiff's blood pressure was controlled and her A1C level was improving since she started Lantus. T. 304. Dr. Blackburn referred plaintiff for a sleep study. T. 304.

In July, 2010, Plaintiff was diagnosed with cirrhosis of a mild to moderate degree after esophageal varices were found. T. 306. Plaintiff was prescribed Nadolol. Also that month, plaintiff tripped and fell, causing pain in her back which she was treating with Flexeril. T. 306.

By November, 2010, the medical records indicate that plaintiff had diabetes with rapidly declining insulin sensitivity requiring further adjustment of medications. T. 309.

On August 5, 2011, Dr. Blackburn completed the Residual Functional Capacity Questionnaire for plaintiff. In it, he listed the diagnoses for plaintiff as coronary artery disease, non-alcoholic cirrhosis, insulin dependent diabetes mellitus, cervical spondylosis, lumbar spondylosis, hypertension, hyperlipidemia, bilateral trochanteric bursitis and bilater osteoarthritis of the knees. T. 322. He described plaintiff as having "continuously declining function." T. 322. Her symptoms included fatigue, dyspnea on exertion, nausea, abdominal bloating, edema, neck and shoulder pain, hip pain, knee pain, low back pain on ambulation, angina, and fluctuating visual acuity. T. 322. He considered Plaintiff's pain to be moderate and chronic in the neck and shoulders, moderate and intermittent in the low back and moderate and intermittent in the hips and knees triggered by ambulation. Her medications were Humalog Kwikpen for diabetes, Furosemide and Spironolactone for fluid retention, Chantix to help her quit smoking, Nadolol to treat hypertension, aspirin, Clobetasol cream for a rash, and Lantus for diabetes. Dr. Blackburn noted that Plaintiff's impairments were consistent with her symptoms

and limitations. He noted that Plaintiff could only sit for one hour, walk 50 yards, stand for 10 minutes, sit for 2 hours of an 8 hour workday, and requires frequent position changes. T. 322.  He also limited Plaintiff to carrying no more than 10 pounds and that she should rarely twist, stoop, squat, and climb but that she had no limitations in her hands.  He concluded that Plaintiff could not sustain full time or part time employment at any exertional level as of February 22, 2010. T. 323.

B.    Plaintiff's Hearing Testimony

Plaintiff testified that she graduated from high school and had completed one year of college. T. 32.  She worked at a nursing home for 27 years, most recently as a front office administrative supervisor in her last year of work. T. 33-34. Domm was laid off in January, 2009 as a result of downsizing. T. 35, 39. Plaintiff testified that the amount she lifted as part of her work duties varied.  It could be 25 pounds in the file room but maintenance staff could help her with the lifting.  T. 36-37.  Plaintiff testified that she could comfortably lift 10 to 15 pounds. T. 43.  She stated that she could stand for 10 to 15 minutes and walk about 10 minutes before she needed to take a break.  T. 43. She could sit 45 minutes to an hour before she needed to change positions or take a break.  T. 43. Domm tried to avoid stairs and testified

that she could stoop but it would be difficult for her to get back up. T. 45. Plaintiff stated that she did not shop for groceries or cook but she performed some surface cleaning such as dusting. Tr. 44. Plaintiff was able to vacuum once or twice a week but found it difficult. T. 44. She did laundry and was able to garden for half hour at a time. Plaintiff also like to read and shop. T. 44.

C.   Vocational Expert Testimony

A vocational expert testified that Plaintiff's past job corresponded to the sedentary position of office manager in the Dictionary of Occupational Titles (DOT). T. 46. When asked by the ALJ to consider a hypothetical individual with Plaintiff's age, education and vocational profile, the vocational expert testified that such an individual could perform sedentary work, but would need a sit/stand option, could not climb stairs, would need to avoid chemicals and fumes and irritants and would be off task for approximately five percent of the day. T. 47. The vocational expert also testified that such an individual could perform Plaintiff's past relevant work as office manager. T. 47.

**DISCUSSION**

I. Scope of Review

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. see generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

II. The Commissioner's Decision to Deny Benefits is Supported by Substantial Evidence in the Record

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, the ALJ adhered to the Social Security Administration's five step sequential analysis evaluating disability benefits. (Tr. 12-18) The five step analysis requires the ALJ to consider the following: 1) whether the claimant is performing substantial gainful activity; 2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; 3) whether the claimant suffers a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; 4) if not, the ALJ next considers whether the impairment prevents the claimant from doing past relevant work given his or her residual functional capacity; 5) if the claimant's impairments prevent his or her from doing past relevant work, whether other work exists in significant numbers in the national economy that accommodates the claimants residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v)and 416.920(a)(4)(I)-(v).

Under step one of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at

any time during the period from her alleged onset date of January 4, 2009. (Tr. 13)  The ALJ next found that the Plaintiff suffered from the following severe impairments: coronary artery disease, diabetes mellitus, obesity and osteoarthritis of the knees.  (Tr. 14)  At step 3, The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. (Tr. 15) Further, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of sedentary work except that plaintiff is restricted to work requiring no stair climbing, no exposure to chemicals, fumes and irritants and allows for a sit/stand option.  Additionally, plaintiff must be able to be off-task for five percent of the day in order to stabilize her sugar levels. T. 15.  Finally, the ALJ determined that considering Plaintiff's age, education, and past relevant work experience, Plaintiff was able to perform her past relevant work as an office manager. (Tr. 21).

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical evidence, Plaintiff's functional limitations and her credibility as well as failing to apply the Treating Physician Rule. Based on the entire record, including the medical evidence, I find that there is substantial evidence in the record to support the ALJ conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

A.    The ALJ Properly Evaluated the Medical Record

Plaintiff first contends that the ALJ failed to properly apply the treating physician rule.  She argues that the ALJ decision to give Dr. Blackburn's opinion "probative weight" and giving the opinions of Drs. Ryan, Ketarie and Boehlert "significant weight" was erroneous. Moreover, she points out that the ALJ did not provide good reasons for rejecting Dr. Blackburn's opinions as to functional capabilities.

While it is the role of the ALJ to balance and ultimately consider the weight to be given conflicting medical opinions, she must nevertheless either give controlling weight to the determinations of treating physicians or provide a good explanation for failing to do so. Balsamo v. Chater, 142 F.3d 75 (2d Cir. 1998).  Pursuant to the treating physician rule, the medical opinion of the physician engaged in the primary treatment of a claimant is given "controlling weight" if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ may decline to give controlling weight to a treating physician's opinion based on, inter alia, "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's

consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Clark v. Commissioner of Social Security, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)).

This Court finds that there was no violation of the treating physician rule. Here, the ALJ specifically analyzed the objective medical evidence in the record as well as against the record of Plaintiff's functionality as a whole against Dr. Blackburn's conclusion as to Plaintiff's abilities and found that Plaintiff's impairments are not as severe as Dr. Blackburn opines. T. 20. The ALJ considered the treatment notes of Dr. Blackburn, her other treating physicians as well as her activities of daily living, and noted that their notes did not support Dr. Blackburn's opinion of Plaintiff's limitations of functionality.

The opinion of Dr. Blackburn was not only inconsistent with that of the independent medical examiner, Dr. Boehlert, but also with Plaintiff's other treating physician specialists. Plaintiff's orthopedist who has treated Plaintiff since 2000 for knee pain, did not impose any limitations. Similarly, Dr. Ryan, Plaintiff's cardiologist, did not place limitations on Plaintiff. Plaintiff's diabetes is under control and being treated. The ALJ noted that Plaintiff did not take prescription pain medications, she was able to perform

household chores, go on daily walks and even her treating physicians recommended that she increase her level of exercise. T. 19.

The ALJ properly considered the weight to be given the conflicting medical opinions and articulated good reasons for not giving controlling weight to Dr. Blackburn's opinion. I find substantial evidence for the ALJ to find that the opinion of Dr. Blackburn regarding Plaintiff's residual functional capacity was not consistent with the record as a whole. Therefore, this Court finds that the ALJ did not violate the treating physician rule in giving the opinion of Dr. Blackburn probative weight.

B.  There is Substantial Evidence in the Record to Support the ALJ's Determination of Plaintiff's Residual Functional Capacity

Next, plaintiff argues that the ALJ erred by resting the residual functional capacity ("RFC") finding on the exertional level of sedentary work rather than indicating plaintiff's specific functional abilities and limitations. She contends that the regulations require that the ALJ RFC assessment must include a function by function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work related abilities on a function by function basis.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4). It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veno v Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")

Here, the ALJ concluded that although Plaintiff had some limitations, the evidence did not support the presence of limitations that would preclude Plaintiff from performing a range of sedentary work. (Tr. 18)  Sedentary work involves lifting no more than ten pounds and involves limited walking or standing. 20 C.F.R. § 404.1567(a).  The ALJ reached this conclusion from a review of all of the relevant medical evidence as well as evaluating Plaintiff's subjective complaints.

The ALJ properly considered Dr. Blackburn's August 5, 2011 assessment on Plaintiff's functioning. T. 18, 20. The ALJ

accorded probative weight to Dr. Blackburn's opinion but found it was not entirely consistent with the record as a whole. The ALJ noted that the independent examiner and Dr. Lewish both provided less restrictive opinions of Plaintiff's functioning. Dr. Boehlert found no limitations and Dr. Lewish advised Plaintiff to minimize activities that aggravated her knee discomfort. T. 220, 235. The ALJ also considered that the evidence of Plaintiff's daily activities did not demonstrate a significant reduction in Plaintiff's functioning. T. 20.

I find that there is substantial evidence in the record to support the ALJ finding of Plaintiff's RFC. Dr. Blackburn's treatment notes specifically note that he discussed job alternatives with Plaintiff and the possibility of her returning to work. T. 285, 297. He went so far as to discuss with Plaintiff medical secretarial work that he believed that she could do. T. 297. Moreover, Plaintiff's other treating physicians, Dr. Lewish and Dr. Ryan, did not render the same opinion regarding Plaintiff's disability as Dr. Blackburn. Instead, Dr. Lewish specifically did not impose any restrictions or limitations on Plaintiff and considered her knee pain a "fairly common problem." T. 220.

C. The ALJ's Credibility Assessment is Supported by Substantial Evidence

In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's statements about her subjective complaints of pain and functional limitations and found that they were not entirely credible. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's statements regarding the "intensity, persistence and limiting effects of those symptoms are not credible to the extent that they were inconsistent with the RFC. T.17. Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013). Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility. Id. This Court, as well as others in this Circuit, have found it improper for an ALJ to find a Plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding." Ubiles v. Astrue, No. 11-CV-6340T (MAT), 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted,

2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other citations omitted)). Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

However here, the ALJ measured Plaintiff's credibility by evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC. She discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, the effectiveness of medication and the treatment of Plaintiff's symptoms. The ALJ determines issues of credibility and great deference is given her judgment. Gernavage v. Shalala, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

The ALJ noted that although Plaintiff complained of pain affecting her hips, knees, back and shoulder, her treatment has been conservative with over the counter medication and exercise. T. 19. There is no inability to effectively ambulate nor does she rely on ambulatory aids in order to carry out her daily activities. The ALJ pointed out that Plaintiff actively sought employment after she was laid off. The ALJ also considered the medical records concerning diabetes. The records showed that the condition was treated conservatively

with medication and that she worked for two years after her diagnosis despite any limiting effects. Finally, the ALJ considered Plaintiff's heart condition. The medical records indicate that the treatment Plaintiff received adequately controlled her condition and she suffered no additional chest pain or hospitalization. Plaintiff remains active and is able to perform various activities without significant limitations.

The ALJ did not discount Plaintiff's complaints entirely. Rather, in assessing Plaintiff's residual functional capacity, the ALJ determined that Plaintiff was unable to perform more than sedentary work. Accordingly, Plaintiff's argument that the ALJ failed to properly assess her subjective complaints is rejected.

D. There is Substantial Evidence in the Record to Support the ALJ Finding that Plaintiff Could Perform Her Past Relevant Work as an Office Manager or Secretary

Lastly, Plaintiff argues that the ALJ erred when she found Plaintiff capable of performing her past relevant work as office manager or secretary. At step 4, Plaintiff had the burden to show that she was unable to perform her past relevant work as she had performed in her specific job and as it is generally performed in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 404.1560(b); SSR 82-61, 1982 WL 31387. Substantial evidence supports the ALJ's finding that Plaintiff, who retained the RFC to perform a range

of sedentary work, could perform her past relevant work as an office manager. T.21.

The vocational expert testified at Plaintiff's hearing that a hypothetical individual with limitations that corresponded to the ALJ's RFC assessment could perform Plaintiff's past relevant work as an office manager. T. 46-47. The vocational expert considered an individual who could perform sedentary work but that also needed to sit/stand throughout the day, have the ability to be off-task for 5 percent of the day to stabilize sugar levels, could not climb stairs and needed to avoid chemicals and fumes and concluded that she could perform Plaintiff's past relevant work. Because there is substantial evidence in the record to support the RFC assessment of the ALJ, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform her past relevant work. 20 C.F.R. §404.1560(b)(2). Moreover, there is no evidence in Plaintiff's own testimony regarding her abilities and of her job responsibilities that would preclude her from performing this or similar positions. She testified that she was able to lift 10 pounds, could use a computer and was able to sit and stand as part of this position. I find substantial evidence supports the finding that Plaintiff could perform her past relevant work as an office manager or secretary.

**CONCLUSION**

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 6). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 7), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____

Honorable Michael A. Telesca
United States District Judge


DATED:     August 29, 2013
           Rochester, New York